## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

CYNTHIA F. ALLEN,          )
                        )
         **Plaintiff,**       )
                        )
v.                      )     **Case No. 12-CV-220-PJC**
                        )
CAROLYN W. COLVIN,     )
Acting Commissioner of the    )
Social Security Administration,[1]  )
                        )
        **Defendant.**     )

## OPINION AND ORDER

Claimant, Cynthia F. Allen ("Allen"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits and supplemental security income benefits under the Social Security Act, 42 U.S.C. §§ 401 *et seq*. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Allen appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Allen was not disabled. For the reasons discussed below, the Court **REVERSES AND REMANDS** the Commissioner's decision.

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Carolyn W. Colvin, the current Acting Commissioner of the Social Security Administration, is substituted for Michael J. Astrue as Defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**Claimant's Background**

Allen was 48 years old at the time of the hearing before the ALJ on May 6, 2010.  (R. 22, 26).  Allen testified that her height was 5'4", and her weight was 309.  (R. 27).  She had a two-year associate's degree.  *Id.*  She last worked in December 2007 as a cashier at Wal-Mart.  *Id.*  Allen testified that her back had been hurting and the pain had been getting worse.  *Id.*  She said that she also had Bell's palsy that had returned, and she couldn't see.  *Id.*  The Bell's palsy affected the nerves in her face on both sides.  *Id.*  Allen testified that there were times when she couldn't talk, and she thought she therefore could not perform satisfactorily as a cashier.  (R. 28).  She said her limited vision would also affect her ability to be a cashier.  *Id.*

The Bell's palsy first affected Allen on her right side in January 2002, and it usually would only affect her for one or two months before going into remission.  (R. 29).  Allen needed to wear a patch on her right eye from the onset of the Bell's palsy because her right eye would not close completely and the patch prevented her eye from drying out.  (R. 30).  In April 2008, Allen realized that her left side was drooping like her right side.  (R. 31).  Her left side had never gone into remission.  (R. 32).  She had no feeling on the right side, and it affected her ability to make facial expressions, such as smiling.  *Id.*  Allen testified that she had "very little" feeling on the left side.  *Id.*  For about two years, Allen had been wearing a full-face mask to compensate for her inability to close both eyes.  (R. 33).

Allen testified that she did not recall the vision examination she had as part of the disability process.  (R. 33-34).  Her understanding was that her vision was correctable to 20/20, but she also testified that her eyesight had continued to deteriorate, with her right eye worse than her left.  (R. 34).  Allen testified that her ability to speak and to make herself understood was about the same every day.  *Id.*  This ability got worse later in the day and the more she spoke.  *Id.*

2

Allen testified that she was in an automobile accident in 2001, and she attributed some of her back problems to that accident.  (R. 36).  She said she experienced low back pain constantly, and she sometimes had to lie down and "let the muscle relax."  (R. 37).  The Indian Health Service had given her 800 mg ibuprofen, and she did not think it helped.  (R. 37-38).  The pain moved up her left side to her ribs, and she also had a limp on her left side.  (R. 38).  She occasionally experienced numbness.  *Id.*  She experienced muscle spasms that shot up from around her tailbone up to the middle of her back.  (R. 39).  She experienced those spasms about three or four times a week.  *Id.*  She fell in December 2009, and she broke her glasses.  (R. 39-40).

Allen testified that she had trouble sitting, and she could sit for about 20 minutes before needing to stand up or lie down.  (R. 40).  She could stand for 30 minutes to an hour before needing to sit down or lie down.  (R. 41).  Allen testified that walking was harder than standing for her, and she could only walk for about 10 minutes.  (R. 42).  During the day, she would lie down about three times for about 20 to 30 minutes each time.  (R. 41).

Allen said that she could lift about 10 pounds, which was less than she thought she could lift at the consultative examination, due to her worsening condition.  (R. 42).  She had trouble bending.  *Id.*

Allen was treated at the Northeastern Tribal Health System ("Indian Health Services") from 2007 through 2010.  (R. 196-233, 244-67, 280-327).  On October 23, 2007, Allen complained of left deltoid pain after restocking a shelf at work.  (R. 203).  In February 2008, her physician referred her for neurological testing due to lingering left wrist pain.  (R. 209).  The test

3

results were normal, and Allen was instructed to continue with ice and splints.  (R. 210).  In April 2008, she was assessed with uncontrolled hypertension and prescribed medication.  (R. 212).  At a later appointment in April 2008, Allen said that the left side of her face was numb, and her eye closed about half way.  (R. 213).  Allen told the physician she had previously experienced two episodes of Bell's palsy on the right side.  *Id.*  The physician assessed recurrent Bell's palsy and referred Allen for an MRI.  *Id.*  On May 19, 2008, Allen still had paralysis of the left side, but the MRI was negative.  (R. 214).  Allen had continuing symptoms in July 2006.  (R. 247).

In apparently October 2008, Allen called her physician at Indian Health Services.  (R. 257).  Allen had slurred speech and was dizzy, and the physician's office advised her to call 911 and to seek treatment for a possible stroke.  *Id.*

An undated record from Indian Health Services apparently in 2009 or 2010 stated that Allen had lumbar pain since 1990 or 1991 when she was stepped on by a cow.  (R. 307).  Allen said previous x-rays had been normal, but she had constant pain.  *Id.*  She was assessed with chronic low back pain, and it appears that she was advised to lose weight and exercise.  *Id.*  X-rays of Allen's lumbar spine taken on March 31, 2009 showed mild multilevel spondylosis, and the impression was "[n]o acute disease."  (R. 317).

Agency consultant David Wiegman, M.D. completed a physical examination of Allen and report dated August 30, 2008.  (R. 237-43).  Allen's eyesight was 20/100 in the right eye and 20/50 in the left eye with her glasses.  (R. 238).  Allen had decreased range of motion of her back with pain on motion, as well as tenderness to palpation over her lower spine.  *Id.*  Dr. Wiegman said that Allen was "alert with fluent speech," and he said that she had normal articulation.  *Id.*  Dr. Wiegman said that Allen's cranial nerves were abnormal because Allen had decreased

sensation to the left side of her face.  (R. 239).  The right side of Allen's face had facial droop, and Allen was unable to move it significantly for talking or for facial expressions.  *Id.*  Dr. Wiegman said that Allen's gait was "fairly normal" and "steady."  *Id.*

Dr. Wiegman included two impressions in his report.  *Id.*  The first was Bell's palsy, and he summarized her facial problems.  *Id.*  He stated that she appeared to have retained good speech and had no mental status problems.  *Id.*  The second impression was low back pain, and he summarized Allen's complaints of problems with walking, standing, lifting and sitting.  *Id.*  He also stated that Allen was morbidly obese and that her obesity had likely contributed to her back pain.  *Id.*

Nonexamining agency consultant Luther Woodcock, M.D., completed a Physical Residual Functional Capacity Assessment on September 16, 2008.  (R. 328-35).  For exertional limitations, Dr. Woodcock found that Allen could perform medium work.  (R. 329).  In the space for narrative comments, Dr. Woodcock noted Allen's Bell's palsy.  *Id.*  Dr. Woodcock briefly summarized Dr. Wiegman's consultative examination.  *Id.*  For postural limitations, Dr. Woodcock found that Allen could occasionally stoop and frequently climb, balance, kneel, crouch, and crawl.  (R. 330).  Dr. Woodcock found that Allen had no manipulative, visual, communicative, or environmental limitations.  (R. 331-35).

As part of the disability application process, two x-rays were taken of Allen's lower spine on February 26, 2009.  (R. 271).  The impression was "mild L2 to S1 endplate spurring without significant disc flattening."  *Id.*

### Procedural History

Allen filed applications in June 2009 for Title II disability insurance benefits and for Title XVI supplemental security income benefits under the Social Security Act, 42 U.S.C. §§ 401 *et*

*seq.* (R. 98-104).  Allen alleged onset of disability as of December 21, 2007.  (R. 101).  The

applications were denied initially and on reconsideration.  (R. 53-60, 62-67).  A hearing before

ALJ Richard J. Kallsnick was held on May 6, 2010.  (R. 22-48).  By decision dated June 9, 2010,

the ALJ found that Allen was not  disabled.  (R. 11-17).  On February 13, 2012, the Appeals

Council denied review of the ALJ's findings.  (R. 1-6).  Thus, the decision of the ALJ represents

a final decision for purposes of this appeal.  20 C.F.R. §§ 404.981, 416.1481.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment." 42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Act only if his

"physical or mental impairment or impairments are of such severity that he is not only unable to

do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability

claim.  20 C.F.R. § 404.1520.[2]  *See also Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988)

---

[2] Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510.  Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c).  If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings").  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform.  *See Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001).  Disability benefits are denied if the Commissioner shows that the impairment which

(detailing steps).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.*

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.  *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id.*  The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id.*, (*quoting Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)).  The court "may neither reweigh the evidence nor substitute" its discretion for that of the Commissioner.  *Hamlin,* 365 F.3d at 1214 (quotation omitted).

## Decision of the Administrative Law Judge

The ALJ found that Allen met insured status requirements through December 31, 2012. (R. 13).  At Step One, the ALJ found that Allen had not engaged in substantial gainful activity since her alleged onset date of December 21, 2007.  *Id.*  At Step Two, the ALJ found that Allen had severe impairments of Bell's palsy and obesity with resultant back pain.  *Id.*  At Step Three, the ALJ found that Allen's impairments did not meet any Listing.  (R. 14).

The ALJ determined that Allen had the RFC to perform the full range of light work.  *Id.* At Step Four, the ALJ found that Allen could perform her past relevant work as a cashier.  (R.

_____

precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

15).  As an alternative finding, at Step Five, the ALJ found that there were jobs in significant numbers in the national economy that Allen could perform, considering her age, education, work experience, and RFC.  (R. 16-17).  Thus, the ALJ found that Allen was not disabled from December 21, 2007 through the date of the decision.  (R. 17).

**Review**

Allen argues that the ALJ did not properly address her obesity; that the ALJ did not properly assess her RFC; that the ALJ erred at Step Four in determining that she could perform her past relevant work; and that the ALJ failed to perform a proper credibility assessment.  The undersigned holds that the ALJ's findings regarding possible impairments of Allen's speech and vision were not legally adequate.  Therefore, the ALJ's decision is reversed.

Allen was clear in her testimony that her Bell's palsy caused her to have slurred speech at times, and she thought this would make it difficult for her to return to her previous work as a cashier.  (R. 28).  Her ability to make herself understood became worse later in the day and the more she spoke.  (R. 34).  She also testified that the Bell's palsy had caused vision problems because she could not completely close her eyes.  (R. 28, 30, 33-34).

An episode in October 2008, when Allen called her physician's office, somewhat supports her testimony regarding her speech.  (R. 257).  The contact at the physician's office noted that Allen was difficult to understand, due to her slurred speech.  *Id.*

The consulting examination by Dr. Wiegman provided some support for Allen's vision claims, because her eyesight in her right eye was 20/100 and in her left eye was 20/50.  (R. 238).

While the ALJ found Allen's Bell's palsy to be a severe impairment at Step Two, he included no impairments relating to Allen's speech or vision in his RFC, which was for the full range of light work.  (R. 13-14).  Thus it appears that the ALJ rejected Allen's claims regarding

her speech and vision in total, although he used different reasoning for the two.  Regarding

Allen's speech, the ALJ first found that she had testified clearly for approximately 15 minutes

during the hearing, and he noted that Dr. Wiegman had said that Allen retained good speech.  (R.

15).  The ALJ then stated:

> [Neither Allen's] testimony nor the medical record was persuasive in establishing
> any kind of genuine impairment to her working.  Ms. Allen said in her testimony
> that she now lacked the ability to interact with the public and that was an
> important feature of the job of cashier.  The undersigned disagrees that she lacks
> the ability because of her Bell's palsy.  Her performance at the hearing
> established that she could interact and for a longer sustained time than she would
> likely be required to do in the job of cashier.

*Id.*

The quoted language from the ALJ's decision creates the impression that the ALJ found

that Allen had some degree of limitation from her speech impairment caused by the Bell's palsy,

but that the severity did not preclude work.  He appears to find that the degree of her limitation

simply was not severe enough to prevent her from returning to her past relevant work as a

cashier.  In making this finding, the ALJ skipped the step of inquiring of the vocational expert

(the "VE") what the speech demands of the job of cashier are.  The ALJ simply found, without

the benefit of assistance from the VE, that Allen could speak for a longer sustained time "than

she would likely be required to do in the job of cashier."

A recent unpublished case decided by the Tenth Circuit gives an example that explains

the error of the ALJ pursuant to the three-phase Step Four analysis.  *Bowman v. Astrue*, 511 F3d.

1270, 1272 (10th Cir. 2008) (explaining three phases).  In *Sissom v. Colvin*, 512 Fed. Appx. 762,

768 (10th Cir. 2013) (unpublished), the ALJ had found postural limitations, but he did not

inquire of the VE regarding what the postural demands of the claimant's past work were.  The

Tenth Circuit remanded so that the ALJ could make the "necessary specific findings."  *Id.*

Here, the ALJ did not find any impairment of Allen's speech, but then said in effect that her speech was adequate for the demands of her past work as a cashier.  On remand, the ALJ should clarify whether he is truly finding no limitations at all regarding Allen's speech, even though he found that her condition of Bell's palsy was a severe impairment at Step Two.  If he finds any limitations of her speech, then the ALJ must make the specific findings required by the three-phase Step Four analysis regarding the demands of her past work.

In a normal case, the ALJ's supported Step Five finding, which was not appealed by Allen, would make it unnecessary to reverse based on error at Step Four.  *See Murrell v. Shalala*, 43 F.3d 1388, 1389-90 (10th Cir. 1994) ("Since the unchallenged step-five finding is, by itself, a sufficient basis for the denial of benefits, plaintiff's success on appeal is foreclosed - regardless of the merit of his arguments relating to step four.").  Here, however, it appears that the ALJ in actuality found an impairment of Allen's speech - just not one so severe that she could not return to her previous work as a cashier.  Therefore this is not just a Step Four issue, but one implicating the ALJ's RFC determination.  A change in his RFC determination adding a limitation to Allen's ability to speak could affect Step Five, and therefore reversal is required even though Allen did not appeal the Step Five finding.

Moreover, the Court has concerns about the ALJ's findings regarding Allen's vision. The ALJ said that the prescription in Allen's glasses was two years old at the time of Dr. Wiegman's consultative examination.  (R. 15).  He also said that there was no indication that she had attempted to obtain a new prescription since Dr. Wiegman's examination.  *Id.*  Building on these two points, the ALJ concluded that "[t]herefore, it is reasonable to assume that her eyeglass prescription is outdated and that a new prescription would improve her vision."  *Id.*

The undersigned is concerned that this assumption by the ALJ constituted a prohibited

substitution of his own medical judgment for that of competent medical treatment providers.  *See e.g. McGoffin v. Barnhart*, 288 F.3d, 1248, 1252 (10th Cir. 2002) (ALJ may not reject treating physician opinion due to his own credibility judgments, speculation, or lay opinion).  Regardless of whether the ALJ's assumption violates this prohibition, however, it is simply not sufficient to address Allen's claims.  Allen's testimony was not that her prescription was becoming worse, but that her eyesight was deteriorating due to her Bell's palsy, which caused Allen to be unable to completely close her eyelids.  While, as the ALJ said, a new prescription might improve her vision, it appears that Allen would continue to have vision problems due to the dryness caused by her condition.  The ALJ was not entitled to omit any limitation in Allen's eyesight under these circumstances.

Because the errors of the ALJ related to Allen's claims of impairments due to speech and vision problems require reversal, the undersigned does not address the remaining contentions of Allen.  On remand, the Commissioner should ensure that any new decision sufficiently addresses all issues raised by Allen.

This Court takes no position on the merits of Allen's disability claim, and "[no] particular result" is ordered on remand.  *Thompson v. Sullivan*, 987 F.2d 1482, 1492-93 (10th Cir. 1993). This case is remanded only to assure that the correct legal standards are invoked in reaching a decision based on the facts of the case.  *Angel v. Barnhart*, 329 F.3d 1208, 1213-14 (10th Cir. 2003), *citing Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).

## Conclusion

Based upon the foregoing, the Court **REVERSES AND REMANDS** the decision of the Commissioner denying disability benefits to Claimant for further proceedings consistent with this Order.

Dated this 5th day of August 2013.

Paul J. Cleary
United States Magistrate Judge